```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

                                  :
NATURE-TECH, LLC
                                  :

    v.                            :   Civil Action No. DKC 19-2053

                                  :
HARTFORD FIRE INSURANCE
COMPANY, ET AL.                   :
```

**MEMORANDUM OPINION**

On July 12, 2019, Plaintiff Nature-Tech, LLC ("Nature-Tech") commenced this action, which stems from a heavily litigated construction project, asserting a single breach of payment bond claim against Defendants Capitol Woodwork, LLC ("Capitol") and Hartford Fire Insurance Company ("Hartford").  A bench trial was held on September 28 and September 29, 2022.  After carefully considering the parties' exhibits, the testimony of the witnesses, the pretrial submissions and post-trial briefs, and the oral arguments of counsel, this court now issues findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).  For the reasons articulated below, judgment will be entered in favor of Defendants Capitol and Hartford.

I.   **Background**

This case involves work done as part of the construction of a hotel and transition space at the Maryland Live! Casino in

Hanover, Maryland ("the Project").[1]  The casino owner, PPE Casino Resorts Maryland LLC ("the Owner"), hired Tutor Perini Building Corporation ("Tutor Perini") as the general contractor for the Project—neither the Owner nor Tutor Perini is party to this lawsuit.  (PTX 1 at 1; ECF No. 1).[2]  Tutor Perini hired Capitol, also known as Mortensen Woodwork, to furnish and install millwork for the Project.  (PTX 1).  Capitol and Hartford executed a payment bond to guarantee payment for Capitol's labor and materials.  (PTX 2).  The payment bond states that Capitol and Hartford

> jointly and severally, bind themselves . . . to the Contractor [Tutor Perini] . . . to pay for labor, materials[,] and equipment used or reasonably required and furnished for use in the performance of the Subcontract [between Tutor Perini and Capitol], which is incorporated in this bond by reference and pursuant to which this bond is issued.

Capitol hired Nature-Tech to fabricate millwork for the Project, and the two companies entered into a Master Subcontract Agreement ("the Agreement").  (PTX 3).  Article 12.5 of the Agreement provides that Nature-Tech, as the Subcontractor, would submit applications for payment to Capitol, the Contractor, and the "Contractor shall pay ninety (90%) percent of the amount of

---

[1] A detailed factual background is also set out in a prior opinion.  (ECF No. 33); *Nature-Tech, LLC v. Hartford Fire Ins. Co.*, No. 19-cv-2053-DKC, 2022 WL 899417, at *1-4 (D.Md. Mar. 28, 2022).

[2] "PTX" refers to exhibits offered by Nature-Tech at trial, and "DTX" refers to exhibits offered by Capitol and Hartford.

2

the Application, withholding ten (10%) percent retainage (the 'Retainage') from each Application." (PTX 3 at ¶ 12.5). Article 12.8, titled "Conditions Precedent," provides:

> Retainage and/or the Final Application payment shall be paid to Subcontractor only after; (a) the Work (including any punch-list work) is completed satisfactorily and accepted by Owner and Contractor; . . . and (e) all disputes, claims, liens, causes of action, and/or lawsuits which are related in any way to this Agreement or to Subcontractor's performance of the Work are resolved.

(PTX 3 at ¶ 12.8).

While construction on the Project was underway, a dispute arose between Capitol and Tutor Perini related to delays in the construction schedule. This dispute, among other issues, is being litigated as part of a lawsuit that is presently pending in Maryland state court. *See PPE Casino Resorts Maryland LLC v. Tutor Perini Building Corp.*, No. C-02-CV-19-002049 (Anne Arundel Cnty. Circuit Court 2019). Capitol, Hartford, Tutor Perini, and the Owner are among the parties involved in that litigation, but Nature-Tech is not.

On July 31, 2018, Capitol advised Nature-Tech that it was "demobilizing the installation team" at the construction site while it tried to work out its dispute with Tutor Perini and that "[n]o deliveries [were] to be scheduled to the jobsite" unless specifically requested by Capitol. (PTX 47). Nature-Tech continued to fabricate millwork but did not ship it, per Capitol's

request. (PTX 50). On August 23, 2018, Tutor Perini issued to Capitol a 48-hour "Notice to Cure," and on August 30, 2018, Tutor Perini declared Capitol in default and terminated it for failure to cure. (PTX 8, 51).

At the time of Capitol's termination, Nature-Tech had not yet completed all outstanding purchase orders with Capitol. Tutor Perini notified Nature-Tech of its intent for Nature-Tech to complete that work through new contracts with Tutor Perini. (PTX 53). It later issued Nature-Tech purchase orders for shipments and millwork. (DTX 49-52). However, Tutor Perini advised Nature-Tech to seek payment from Hartford for certain items that were included in purchase orders from Capitol prior to the termination. (DTX 22).

Nature-Tech requested payment from Capitol for millwork completed and shipped, millwork in progress, and outstanding retainage, and Capitol refused. Nature-Tech submitted a claim against the payment bond for $473,961.70 in unpaid billings. (DTX 23). Hartford reviewed Nature-Tech's claim and analyzed thirty-two items that Tutor Perini and Nature-Tech had identified as outstanding as of August 30, 2018, the termination date of Capitol's contract. Hartford determined that Capitol was not responsible for twelve of the items, so it deducted $140,629.13 from the claim amount. It also determined that Capitol was entitled to keep $135,603.18 as retainage. The remaining amount

that Hartford determined was due to Nature-Tech was $197,729.39. $157,280.56 had already been paid, and Hartford released the remaining $40,448.83 to Nature-Tech.  (DTX 24).

Nature-Tech has conceded that Capitol was not responsible for some of the twelve items, but it has maintained that it is entitled to payment from the payment bond for five items, worth $66,827.25, as well as $127,855.46 of the retainage.[3]  The five items are:

1) "Foot rail for main bar," shipped 2/5/19: $7,350.00

2) "Series #104 Prefunction entrance door surrounds," shipped 1/16/19: $25,364.00

3) "Series #9 Coat Check and surrounding wood veneer wall panels," shipped 2/5/19: $18,936.00

4) "Taller Base molding for in Ballroom," shipped 9/1/18: $6,342.25

5) "Ballroom Doors 180 A, B, C, D, E, G, & H," shipped 9/24/18: $8,835.00[4]

(DTX 46).  In a May 9, 2019, email to a Vice President of Tutor Perini, a Nature-Tech Senior Project Manager listed those items and described them as "items that were shipped to the job site AFTER Capitol was terminated from the project," adding that they were "all items that were ordered by Capitol, but we were told to

---

[3] At trial, Nature-Tech provided a revised retainage amount, which excluded retainage that had been drawn from items for which Nature-Tech had billed but not completed.

[4] Hartford's report lists the amount it withheld for the Ballroom Doors as $8,335.00.  (DTX 23 at 9, 11).  It is unclear whether the difference in digits is a typographical error or reflective of a disagreement in calculations.

5

ship by Tutor Perini so that the project could continue to move towards completion."[5]  The Nature-Tech employee went on to state that "these items need to be added to you[r] claim against Capitol and the[n] we would receive compensation from Tutor Perini."  The Vice President of Tutor Perini responded that he understood that Hartford refused to pay for those items and said, "We are including [them] in our claim."  (DTX 46).

Nature-Tech filed the instant lawsuit to recover the portion of its claim against the payment bond for which it argues Hartford improperly denied payment.  Capitol asserted a counterclaim against Nature-Tech for breach of contract,[6] but Capitol declined to pursue its counterclaim at trial.  Judgment will be entered for Nature-Tech on that claim.  The only issues that remain unresolved are whether Nature-Tech is entitled to payment for the five outstanding items and whether Nature-Tech is entitled to immediate payment of the retainage.  This court took the matter under advisement after the trial concluded, and the parties submitted

---

[5] The email listed a sixth item, but Nature-Tech has since conceded that it does not have evidence that it is entitled to payment for that item.

[6] Capitol also initially asserted a counterclaim for tortious interference.  This court granted Nature-Tech's motion for summary judgment on both counterclaims but subsequently granted Capitol's motion to reconsider as to the breach of contract counterclaim. *See Nature-Tech, LLC v. Hartford Fire Ins. Co.*, No. 19-cv-2053-DKC, 2022 WL 899417 (D.Md. Mar. 28, 2022); *Nature-Tech, LLC v. Hartford Fire Ins. Co.*, No. 19-cv-2053-DKC, 2022 WL 2065875 (D.Md. June 8, 2022).

post-trial briefs. (ECF Nos. 55-57). For the reasons set forth below, this court concludes that Nature-Tech has not met its burden to prove by a preponderance of the evidence that it is presently entitled to any additional payment from Hartford and Capitol.

**II. Findings of Fact and Conclusions of Law**

    **A.  Five Outstanding Items**

Nature-Tech's claim is for breach of a payment bond, brought against Capitol as principal and Hartford as surety of the payment bond. Nature-Tech has the burden to prove that it is entitled to payment under the payment bond for the disputed items. In a suretyship, "[t]he bond is the measure of the surety's obligation," *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 300 (2004), and it "is to be construed in connection with the contract whose performance it secures[] in determining the right of laborers or materialmen to recover thereon." *Lange v. Bd. of Educ. ex rel. I.B.M. Corp.*, 183 Md. 255, 261 (1944); *see also Gen. Builders Supply Co. v. MacArthur*, 228 Md. 320, 326 (1962)("[I]t is clear that the liability of the surety is measured by the contract of the principal."). Surety bonds "must be construed in accordance with our traditional rules of objective contract interpretation."[7] *Atl. Contracting & Material Co.*, 380 Md. at 300. The terms of the

---

[7] As noted in a previous opinion, Maryland law applies to the payment bond claim. *See Nature-Tech, LLC v. Hartford Fire Ins. Co.*, No. 19-cv-2053-DKC, 2022 WL 899417, at *5 (D.Md. Mar. 28, 2022).

bond "must be interpreted in context[] and given their ordinary and usual meaning," but when "a coverage issue depends upon language of the policy which is ambiguous, we will resolve that ambiguity in favor of the insured." *Id.* at 301 (internal quotation marks omitted).

Hartford denied payment for four of the five items because the items were not fully fabricated before the termination of Capitol's contract with Tutor Perini. (DTX 23 at 6-7, 9-10). It is Hartford and Capitol's position that anything fabricated after Capitol's termination was not covered by the payment bond because the payment bond only covered work performed under Capitol's contract with Tutor Perini. Nature-Tech contends that Capitol should pay for any items Nature-Tech fabricated pursuant to purchase orders that Capitol issued prior to termination. The payment bond's terms better support Hartford and Capitol's position.

The payment bond was issued "pursuant to" the contract between Capitol and Tutor Perini and binds Capitol and Hartford to pay for items "used or reasonably required and furnished for use in the performance of" that contract. (PTX 2). The bond's purpose was to indemnify Tutor Perini from claims under its contract with Capitol. (PTX 1 at 6). Anything fabricated after the termination of the contract between Tutor Perini and Capitol was not "for use

in the performance of" that contract because that contract was no longer in effect.

Evidence suggesting that Tutor Perini arranged for Nature-Tech to fabricate items directly for Tutor Perini after Capitol's termination supports this conclusion and undermines Nature-Tech's position that the items were fabricated for Capitol's contract. In an August 31, 2018, email to the CEO of Nature-Tech advising him that Capitol's contract had been terminated, Tutor Perini's Executive Vice President stated that Tutor Perini's contract with Capitol "permits [Tutor Perini] to complete [Capitol's] work through others if they are found in default and/or are terminated." The email advised Nature-Tech that Tutor Perini would be "contacting [Nature-Tech] shortly to arrange for immediate jobsite delivery of completed millwork items[,] including those currently in fabrication upon completion," and that it would be "issuing [Nature-Tech] a purchase order for all remaining items needed to complete the work currently under [Capitol's] contract." (PTX 53).

Capitol and Hartford introduced into evidence a document on Tutor Perini letterhead, dated "As-of 08/30/18" and titled "Balance of Millwork Items for NT [Nature-Tech] to Fabricate & TPBC [Tutor Perini] to Install After [Capitol's] Termination," that appears to include each of the five disputed items. (DTX 15). The Executive Vice President of Nature-Tech testified at

9

trial that this document was generated as part of the process in which Nature-Tech worked with Tutor Perini to complete the outstanding millwork for the project.  There was also an email exchange, dated January 10, 2019, between employees of Tutor Perini and Nature-Tech regarding outstanding millwork items that were received or would soon be received by Tutor Perini's "millwork installation crew and carpenter foreman"; the email specifically mentioned the foot rail as having been fabricated and in transit to the job site. (PTX 55).  Nature-Tech has not presented evidence that contradicts a reading of these documents as indicative that at least some of the items were fabricated under the direction of Tutor Perini, not Capitol.

The record does not support a conclusion that the items shipped several months after Capitol's August 30, 2018, termination were fabricated for use in the performance of the Capitol-Tutor Perini contract.  The parties have represented that the foot rail was not shipped until February 2019, the "Series #104 Prefunction entrance door surrounds" were not shipped until January 2019, and the "Series #9 Coat Check and surrounding wood veneer wall panels" were not shipped until February 2019. (DTX 23).  At trial, Capitol's corporate representative testified that items that were delivered four or five months after the termination date were clearly fabricated outside the purview of Capitol's contract.  Nature-Tech did not present any alternative explanation

10

for the several-month delay in shipment for items supposedly fabricated in the performance of Capitol's terminated contract. Nature-Tech has not met its burden to prove that it is entitled to payment for those three items from the payment bond.

The ballroom doors were shipped on September 24, 2018, which is closer to the termination date.  However, Hartford determined that Nature-Tech completed fabrication for this item "after termination per the request from [Tutor Perini]."  (DTX 23 at 9). At trial, Capitol's corporate representative testified that there were no drawings or field dimensions approved as of August 30, 2018, for the ballroom doors, which he said indicated that Nature-Tech could not have fabricated them until after the termination. A document sent from a Tutor Perini employee to Nature-Tech employees, dated August 27, 2018, and titled "Items-Status Log," lists the ballroom doors with a note: "Need updated drawings." (DTX 20).  Nature-Tech has not contradicted that version of events, nor has it presented evidence that the ballroom doors were fabricated before Capitol's termination.  Nature-Tech has not met its burden to prove that the ballroom doors were covered by the payment bond.

The fifth item—the "Taller Base molding for in Ballroom"—requires a different analysis because the parties have agreed that it was shipped on September 1, 2018, and Capitol has conceded that this item was probably fabricated before the termination.  However,

11

Hartford only denied payment for some of the amount Nature-Tech requested for this item.  (DTX 23 at 10).  Hartford determined that this item was billed at $25,369 for 1,600 linear feet of molding, but the delivery ticket showed that only 1,200 linear feet of molding was delivered.  Therefore, Hartford reduced the contract value by one quarter and paid all but $6,342.25 for that item.  Nature-Tech now requests the remaining $6,342.25, but it has produced no evidence that the full 1,600 was delivered.  Therefore, Nature-Tech has not met its burden to prove that it is entitled to additional payment for this item.

    **B.**    **Retainage**

Nature-Tech also seeks immediate payment of the amount withheld as retainage.  Pursuant to its contract with Nature-Tech, Capitol withheld 10% of each payment to Nature-Tech as retainage.  This money is covered by the payment bond because the work to which it pertains was done "for use in the performance of" the Capitol-Tutor Perini contract.  The question is whether Nature-Tech is presently entitled to payment of that retainage.

The answer turns on the terms of the Agreement between Capitol and Nature-Tech, which provides that retainage shall be paid to Nature-Tech "only after" certain conditions are met, including that "all disputes, claims, liens, causes of action, and/or lawsuits which are related in any way to this Agreement or to [Nature-Tech's] performance of the Work are resolved."  (PTX 3 at

¶ 12.8). Under this provision, which is titled "Conditions Precedent," each condition must be met before Nature-Tech is entitled to payment. *See Duff v. Trenton Beverage Co.*, 73 A.2d 578, 604 (N.J. 1950) ("Generally, no liability can arise on a promise subject to a condition precedent until the condition is met.");[8] *see also Assoc. Mech. Corp., Inc. v. Martin K. Eby Constr. Co.*, 67 F.Supp.2d 1375, 1379 (M.D.Ga. 1999) (determining that language identical to the clause at issue in the present case was a "condition precedent" for payment to a subcontractor). Nature-Tech bears the burden of proving that the conditions precedent have been satisfied. *See Thomas Orr Trucking & Forwarding Co. v. Metro. Sur. Co.*, 73 A. 541, 543 (N.J. 1909) ("It cannot be doubted that, where there is an allegation by the defendant of nonperformance of the special conditions precedent, the general performance of which has been asserted by the plaintiff . . . , the burden of proof remains with the plaintiff to show performance as at common law."); *see also* 5A *Wright & Miller, Fed. Prac. & Proc. Civ.* § 1304 (4th ed.).[9]

---

[8] Pursuant to Article 16.1 of the Agreement, the Agreement is subject to New Jersey law. (PTX 3 at ¶ 16.1).

[9] Although the parties dispute who bears the burden of proving the satisfaction of the condition precedent at issue here, neither party questions whether the satisfaction or lack thereof was properly pleaded in the complaint and answers. *See* 5A *Wright & Miller, Fed. Prac. & Proc. Civ.* § 1304 (4th ed.). However, even assuming the burden of proof is on the Defendants here, they have met that burden for the same reasons discussed.

Capitol and Hartford contend that a condition precedent to payment of the retainage has not been satisfied because the litigation presently pending in Maryland state court is related to Nature-Tech's contract with Capitol and the work performed thereunder. Nature-Tech argues that because Nature-Tech is not a party to the lawsuit, and Capitol has not proven that deficiencies in Nature-Tech's work are the basis for the claims against it, the lawsuit is not "related in any way" to Nature-Tech or its work.

Nature-Tech's reading of this provision is too narrow. A plain reading of "related in any way" is that it has a broad reach, including disputes or lawsuits that involve the Agreement or Nature-Tech's work on the Project in any way. *Cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning[.]"); *E. Coast Repair & Fabrication, LLC v. United States ex rel. Dep't of Navy*, 16 F.4th 87, 89, 91 (4th Cir. 2021) (interpreting a release from liability for "any and all [claims] arising out of or in any way relating to" a contract as "broad"). Nature-Tech argues that the lawsuit could be unrelated to its work because "Capitol's contractual scope of work on the Maryland Live! Project far exceeded simply supplying the millwork; it involved preparing shop drawings and the labor to install all of the millwork." (ECF No. 56). But the shop drawings Nature-Tech used to fabricate the millwork and the labor used to install

the millwork Nature-Tech fabricated are clearly "related" to Nature-Tech's work.

Capitol has provided a list of the backcharges that Tutor Perini has asserted against Capitol, (DTX 8), and it identified at trial through the testimony of its corporate representative that $629,576 relate to the Agreement and Nature-Tech's performance of work under the Agreement.  Nature-Tech responds that Capitol and Hartford have not proven that the backcharges are "valid" or "establish[ed] any causal connection between Tutor Perini's vaguely alleged backcharges and any specific deficiencies by Nature-Tech."  (ECF No. 56 at 5).  But the Agreement does not require that claims be valid in order to justify withholding of retainage—it merely requires that claims exist and that they be unresolved.  And a causal connection is not required—the claims in the lawsuit must merely be "related" to Nature-Tech's work "in any way," and that is clearly the case.

Even if, as Nature-Tech asserts, all of Tutor-Perini's claims against Capitol pertain solely to Capitol's deficiencies in performing its obligations under its contract with Tutor Perini, it is inconceivable that they could all be completely unrelated to Nature-Tech's performance under the Agreement.  Nature-Tech attempts to give examples of Capitol's failures that are unrelated to Nature-Tech's performance, such as "prepar[ing] shop drawings containing errors and missing information, delaying the start of

15

fabrication[, and] fail[ing] to prepare shop drawings for a large portion of its contracted scope of work." (ECF No. 56 at 5). But those are all related in some way to Nature-Tech's performance—they all impacted Nature-Tech's ability to fabricate the millwork in a timely way as required by Tutor Perini, regardless of who was at fault for those delays. Therefore, until the litigation is resolved, Capitol is entitled under the Agreement to continue withholding retainage.

### III. Conclusion

For the foregoing reasons, judgment will be entered in favor of Defendants Capitol and Hartford. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge